**APARTMENT COMMUNITIES CORP.,**
**Defendant Below, Appellant,**

v.

**The STATE of Delaware Upon the Relation of the Secretary of the Department of Transportation, Plaintiff Below, Appellee.**

**Frank E. ACIERNO, Defendant**
**Below, Appellant,**

v.

**The STATE of Delaware Upon the Relation of the Secretary of the Department of Transportation, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted May 13, 1980 and
Sept. 10, 1980.

Decided Oct. 7, 1980.

John E. Babiarz, Jr. (argued) of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant–appellant Apartment Communities Corp.

James A. Erisman (argued) of Conner, Daley, Erisman & vanOgtrop, Wilmington, for defendant–appellant Frank E. Acierno.

John G. Mulford (argued) of Theisen, Lank, Mulford & Goldberg, Wilmington, for plaintiff–appellee.

Before HERRMANN, C. J., and QUIL-LEN and HORSEY, JJ.

PER CURIAM:

Apartment Communities Corp. (ACC) and Frank E. Acierno have brought separate appeals from separate decisions in a single Court of Chancery case. Acierno is president and sole shareholder of ACC. Because of this relationship and identical underlying facts in each matter, we have consolidated the two appeals for decision in this single opinion.

The plaintiff is the State of Delaware on behalf of the Department of Transportation. On December 7, 1973, plaintiff wrote to Acierno at the ACC address informing him that several signs were erected in violation of several provisions of 17 *Del.C.* Chapter 11, prohibiting the placing of outdoor advertising signs on public highway right-of-ways, and advising him to remove the signs. The signs were direction markers for several apartment complexes that plaintiff believed were managed by ACC. On January 24th, 1974, and later on March 12th, 1974, the plaintiff again, in writing, advised Acierno to remove the signs. Plaintiff, in evident frustration, had begun to remove the signs itself by this time. Acierno still removed no signs. In fact, additional signs were being erected, replacing the removed signs. On April 22nd, 1975, and later on February 22nd, 1978, Acierno was again instructed by letter to remove the existing signs. By this time plaintiff had removed several thousand of the signs. Acierno did not comply, and the signs continued to go up. Finally, on May 3rd, 1978, plaintiff brought suit against ACC, seeking monetary and injunctive relief. On July 12th, 1978, ACC was preliminarily enjoined from placing more signs on the State's right-of-ways. The trial on the merits occurred on May 24th, 1979, and, on August 7, 1979, the Vice Chancellor ruled for plaintiff, permanently enjoining ACC from erecting additional signs and awarding plaintiff $11,533.29 damages to cover expenses incurred in removing the signs, as well as $5,066.45 in litigation costs. Subsequent to judgment, ACC, pursuant to Chancery Rule 60(b), succeeded in reducing litigation expenses to $2,595.25.

I

ACC asserts that the Vice Chancellor's finding that the signs were erected within State right-of-ways, an essential element of the State's case, was not supported by the evidence, and that the State offered insufficient evidence to prove its damage.

Sufficient evidence exists in the record to support the Vice Chancellor's finding that the signs were located within the State's right-of-ways. ACC introduced no evidence at trial. The State, on the other hand, placed in evidence: (1) the testimony of Carl Bastek, head of the sign removal operation, who testified that the signs were located within the State's right-of-ways,

(2) photographs of signs located within the right-of-ways, and (3) the letters informing Acierno that the signs were located within right-of-ways. The Vice Chancellor's finding of fact "[is] sufficiently supported by the record and [is] the product of an orderly and logical deductive process." *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972). We accept it.

As to damages, Mr. Bastek testified that the total State cost for removal of all signs (including others than ACC's) in the relevant time period was $15,377.72. He then stated that ACC's signs were responsible for at least 90% of that figure. He testified that he reached the total by multiplying the number of working days that each worker involved spent removing the signs by his daily pay rate. Using this figure, the Vice Chancellor awarded the State $11,533.29, 75% of the total removal costs, "giving defendant the benefit of any meager doubt that may exist." ACC argues that the figure was merely a "seat of the pants" guess. Bastek's testimony, we believe, is evidence sufficient to support the finding, and amount, of damages. *Levitt*, at 673. Additionally, "[w]hen the determination of facts turns on a question of credibility and the acceptance or rejection of 'live' testimony by the trial judge, his findings will be approved upon review." *Id.* This language applies to Bastek's testimony. We approve the Vice Chancellor's finding of damages. See also *Falcon Tanker v. Litton*, Del.Super., 380 A.2d 569 (1977).

The judgment of the Court of Chancery as to Apartment Communities Corp. is affirmed.

## II

After judgment against ACC in the Court of Chancery, the State deposed Acierno to ascertain the amount of ACC's assets. At that time Acierno disclosed that he, and not ACC, was the manager of the apartment complexes that were the subject of the illegal signs. This was literally news to the plaintiff, for Acierno had admitted that ACC was the manager of the apartments in his sworn answer, on behalf of ACC, to the original complaint. Indeed, ACC has not raised this point in its direct appeal and, particularly in light of its answer, we did not raise it *sua sponte* in the ACC appeal, *supra*.

The State, as a consequence of the Acierno deposition, sought to make Acierno subject to the injunction and jointly and severally liable for the money judgment by means of a Rule 60(b) motion. The motion was granted by the Vice Chancellor, and Acierno appeals.

Acierno maintains that the Court of Chancery violated his due process of law by making him subject to the judgment of a lawsuit that he was not a party to. We do not need to reach this argument. The Vice Chancellor used Rule 60(b), a rule designed primarily to shield parties from judgments entered into because of fraud, mistake, etc., incorrectly, as a sword, to bind Acierno, a non-party, to a judgment that was rendered (at least in part) due to his untrue answer. We believe such an extended use of Rule 60(b) exceeds its purpose and is therefore impermissible. As the Vice Chancellor said:

> "First of all, I must confess to ignorance of any law or announced legal theory that would permit a person who was nonparty to the litigation to be made a defendant subject to the liability of the judgment entered therein by means of a Rule 60 motion. Nor have the parties offered any authorities on this one way or the other."

According to our understanding of the purpose of the Rule, we are required to reverse the granting of the 60(b) motion. Rather than require an entirely new lawsuit and trial, however, we believe that the Court of Chancery, upon an appropriate application with proper pleadings, can consider joining Acierno as a party under Court of Chancery Rule 21, "on such terms as are just." If Mr. Acierno is joined, in light of his position with ACC and his less than responsible behavior in this matter, and to promote judicial economy, as well as to reduce litigation expenses, we believe that the State may, at its option, and in the Court of Chancery's

discretion, include without repetition its case in chief as already presented, in its case against Acierno. Mr. Acierno of course should have a full opportunity to submit his own defense, if any. We believe such terms are "just" under Rule 21. Moreover, it may also be appropriate to consider, upon application, whether Mr. Acierno's actions have caused unnecessary expense in awarding costs. See Court of Chancery Rule 55(e).

As to the Acierno appeal, the judgment of the Court of Chancery is reversed but the cause is remanded so that plaintiff can have an opportunity to make applications to the Court of Chancery consistent with this opinion.